* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms and adopts the Opinion and Award of the Deputy Commissioner with some modifications.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement dated October 11, 2006, and at the hearing as:
 STIPULATIONS
1. This action is subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed between the plaintiff and the employer-defendant at the time of the alleged accident.
3. The date of the alleged accident was November 2, 2005. 4. The employer-defendant was covered by insurance on the date of the alleged accident.
5. The medical records and reports of Cleveland Regional Medical Center and Dr. Andrew Taylor of Shelby Surgical Associates from November 2, 2005, through the date of the hearing may be received into evidence.
6. The plaintiff was out of work from November 2, 2005, and he returned to work for one day on January 10th 2006. Plaintiff returned to work with another employer on April 12, 2006.
7. The plaintiff's average weekly wage was three hundred thirty and 00/100 dollars ($330.00).
8. Documents entered into evidence include the following:
 a. Stipulated Exhibit #1 — Industrial Commission forms
 b. Stipulated Exhibit #2 — Plaintiff's medical records
 c. Stipulated Exhibit #3 — Discovery responses
 d. Stipulated Exhibit #4 — Employee incident report
 e. Stipulated Exhibit #5 — Plaintiff's time card
 f. Stipulated Exhibit #6 — Plaintiff's recorded statement
 g. Plaintiff's Exhibit #1 — Plaintiff's rubber boots
 h. Plaintiff's Exhibit #2 — Rubber gloves *Page 3 
 i. Plaintiff's Exhibit #3 — Plaintiff's clothing worn on the date of the incident (shirt and pants)
 j. Plaintiff's Exhibit #5 — Photographs of plaintiff's injuries and clothing
 k. Defendant's Exhibit #1 — Doctor's note dated December 22, 2006 * * * * * * * * * * *
Based upon the competent and credible evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, the plaintiff was 48 years old; his date of birth is July 14, 1957. Employer-defendant hired Plaintiff on April 13, 2005, as a forklift operator in the Basement Department of the Pittsburg Plate Glass ("PPG") facility in Shelby, North Carolina. Plaintiff has a twelfth grade education, during which he was required to be in special education classes in order to obtain a diploma.
2. Employer-defendant is an agency that provides workers to large projects and manages those workers. At the time of his injury, plaintiff worked for GCA at the PPG plant. His duties consisted of removing waste from the forming of fiberglass that accumulated in the basement area.
3. The PPG plant produces fiberglass through an elaborate process where the raw materials begin on an upper floor and filters down through various treatments, including being heated in a furnace at approximately 1500 degrees Fahrenheit and the application of chemicals to the materials at various levels of the processing, until it is in its finished form. The waste materials from the fiberglass processing are washed down through chutes into bins or dumpsters. There are approximately twelve chutes that come into the basement from the floor above *Page 4 
emptying waste and wastewater into these large bins. According to Jay Patel, an employee, water comes into the basement from drains and other sources from an upper level and wastewater also routinely splashes out of the bins or the bins overflow causing the floor to remain substantially wet throughout the day. The wastewater or liquid on the floor is milky in appearance and contains some chemicals, which wash off as fiberglass is processed. Some of the chemicals used in processing fiberglass are acidic in content.
4. On November 2, 2005, the plaintiff suffered an injury by accident during the course and scope of and arising out of his employment with the employer-defendant when a bundle of waste from the forming floor above the basement area in which the plaintiff worked fell into the water behind the plaintiff and startled him. The plaintiff was standing in wastewater on the basement floor at the time. The plaintiff fell back against a metal bin containing waste packages of fiberglass and wastewater, and fell down into wastewater and other materials that had accumulated on the basement floor. Although the plaintiff attempted to stop his fall by placing his arms behind him on the floor, his back submerged in the liquid wastewater on the floor and his upper back, in particular, became immersed in the liquid wastewater. The plaintiff was wearing high top rubber boots and gloves but his arms and back were unprotected other than by the work clothing that he was wearing. The plaintiff testified that his back struck the metal bin that was filled with fiberglass waste and wastewater before he fell into the liquid wastewater on the floor.
5. After getting up, plaintiff attempted to continue his work. He felt a burning sensation, particularly in the shoulder area of his back that had struck the metal bin and then been submerged in the liquid on the floor. The stinging and burning was very painful and his shirt was sticking on his back. No one else was in the basement at the time of the accident. After trying to work for a short period of time plaintiff went to an upper level where his supervisor's office was located to report the accident. The plaintiff's testimony relating to how his injury occurred is found to be credible.
6. When plaintiff notified his direct supervisor, Robert Phillips, about the accident and when it happened, Mr. Phillips lifted Mr. Blanton's shirt to look at his back. Mr. Phillips testified that the back looked bad, but that it appeared to him to be scabbed and "black-looking" when he observed it. Mr. Phillips had no medical background or training, but formed an opinion that the injury might be an old injury because of the appearance of the wound.
7. Mr. Phillips called two other supervisors who were on their lunch break to come to his office. Both of these supervisors came to Mr. Phillips' office, observed the wound and formed a lay opinion that the plaintiff's wound was old and could not have occurred on the job because it was blackened and appeared to be scabbing over. Neither of the supervisors who examined the plaintiff's wound had any medical background or training.
8. An incident report was filed in this case which bore a signature of the plaintiff. The plaintiff contends that the incident report did not accurately reflect his reporting of the accident or his need for medical treatment. The incident report was started by his direct supervisor, Mr. Robert Phillips, but a second supervisor interrupted the process and finished completing the form in a way that did not accurately represent what plaintiff had told Mr. Phillips about the accident and his condition.
9. The plaintiff returned to his job as suggested by his supervisors after they insisted that he had not been injured that day. In spite of his attempt to continue to work, the plaintiff suffered such discomfort that he left work early and went to his sister's home to have her view his back condition. Upon seeing the wound, the plaintiff's sister, Carolyn Pearson, directed him *Page 6 
to go to the emergency room at Cleveland Regional Medical Center. Ms. Pearson called plaintiff's supervisor to inform him that plaintiff was going to the hospital, but the supervisor did not come to the hospital.
10. Plaintiff's sister testified that she saw plaintiff's back on the morning of November 2, 2005 before he reported for work and plaintiff's back was not burned or injured. However, when plaintiff arrived at her home later that afternoon, his back was injured. She had talked to plaintiff and Mr. Phillips earlier in the day and she knew he had reported an injury. The testimony of Ms. Pearson is found to be credible.
11. The plaintiff was examined by medical personnel at the Cleveland Regional Medical Center, Shelby, North Carolina. The plaintiff was diagnosed as having second degree burns to his back and left arm and was referred to Dr. Andrew J. Taylor for further examination and treatment.
12. The plaintiff was examined by Dr. Andrew Taylor beginning November 4, 2005. In his medical note dated November 4, 2005, Dr. Taylor noted that upon examination the plaintiff had a 15x15 area on the left upper back consistent with an abrasion/chemical burn. The skin was all black and necrotic. He also found a smaller second degree burn on the lateral aspect of plaintiff's left forearm and some mild irritation of the left shin. Dr. Taylor diagnosed second degree burns and an area of third degree burns on plaintiff's back and arm.
13. Dr. Taylor wrote a note taking the plaintiff out of work on November 14, 2005. On December 22, 2005, he wrote a note allowing plaintiff to return to work in two weeks. Plaintiff tried to return to work on January 10, 2006 but experienced great discomfort. On January 12, 2006, the plaintiff returned to Dr. Taylor stating that when he tried to go back to work he had a lot of pain and weakness in his left arm and significant discomfort in his back area *Page 7 
when he got hot and sweated. Dr. Taylor noted again that plaintiff would significantly benefit from physical therapy and that he did not see how the plaintiff could work until he is more comfortable or performs a different job. Dr. Taylor wrote a note on January 12, 2006, stating the plaintiff is unable to work until he can get stronger and better range of motion. He restated his recommendation that the plaintiff be provided physical therapy. Dr. Taylor wrote a letter to Travelers Insurance on January 12, 2006 stating that plaintiff had sustained a burn at work and needed further medical care and treatment including physical therapy.
13. Dr. Taylor answered Interrogatories under oath, where he stated, among other things, that the plaintiff suffered burns to his back and arm from falling on his job and that he needed physical therapy.
14. Defendants presented the testimony of Jay Patel whom they tendered as an expert in chemical engineering. Mr. Patel testified that he primarily was a production worker for employer-defendant and he did not have any specialized background in chemistry.
15. Defendants based their denial of plaintiff's claim of injury on their lay opinion that the burn injury did not look like a new injury and allegedly plaintiff's clothes were not wet. Dr. Taylor testified that what a burn injury would look like right after a contact burn is different for each person and each chemical. He referred to the black escharring defendants' witnesses saw on plaintiff's back as "probably nothing more than dead tissue." He testified that if you kill tissue, escharring can form very quickly. According to Dr. Taylor, the black eschar is probably seen more commonly with chemical burns, but it is more associated with a deeper, more intense burn. Dr. Taylor opined that plaintiff's burn was consistent with a contact-type burn and to a reasonable degree of medical certainty, it is more likely than not, that plaintiff's burn injury was caused by his falling into water on the floor containing chemicals while at work on November 2, *Page 8 
2005. The Full Commission gives great weight to the expert medical opinion of Dr. Taylor and finds that Plaintiff's burns on his back and forearm were caused by his fall into wastewater containing chemicals at work on November 2, 2005.
16. At the time of hearing before the Deputy Commissioner, plaintiff had been unable to consult a physician since February 2006 when he last saw Dr. Andrew Taylor. The plaintiff was unable to obtain further medical evaluation because he had no insurance and lacked the funds to obtain such treatment. Plaintiff has not been able to participate in physical therapy as recommended by Dr. Taylor due to financial constraints. At the time of hearing before the Deputy Commissioner, the plaintiff was still having problems with his arm and back resulting from his injury but he was able to work.
17. As a result of his compensable injury, plaintiff was unable to earn any wages in any employment from November 3, 2005. through April 11, 2006. Plaintiff began working for Eaton Corporation in Kings Mountain on April 12, 2006 earning greater wages than his pre-injury wages.
18. The Plaintiff's average weekly wage of $330.00 yields a compensation rate of $220.01.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident to his back and left arm arising out of and in the course of his employment with the employer-defendant on November 2, 2005, resulting in second and third degree burns on his back and left arm. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. Plaintiff is entitled to receive temporary total disability compensation from the defendants from November 3, 2005 through April 11, 2006, at the rate of $220.01 per week. N.C. Gen. Stat. § 97-29.
3. The plaintiff is entitled to receive payment for all medical expenses incurred at Cleveland Regional Medical Center on November 2-3, 2005 and all related medical expenses incurred with Dr. Andrew Taylor, as well as prescription drug expenses, and all other medical expenses incurred by the plaintiff that were necessary to effect a cure, provide relief and/or lessen his period of disability. N.C. Gen. Stat. §§97-2(19); 97-25.
4. Plaintiff is entitled to receive further medical examination, the costs of which shall be borne by defendants, to assist in a determination as to whether or not plaintiff has reached maximum medical improvement. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved herein, defendants shall pay to plaintiff temporary total disability compensation from November 3, 2005 through April 11, 2006, at the rate of $220.01 per week. This amount, already accrued, shall be paid in lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff for all medical treatment that was or is necessary to effect a cure, provide relief and/or lessen his period of disability, including, but not limited to, bills for treatment at Cleveland Regional Medical Center, with Dr. Andrew Taylor, as well as prescription drug expenses and for an evaluation to determine if plaintiff has reached maximum medical improvement. Bills for the same shall be submitted according to proper Industrial Commission procedure.
3. Attorney's fees in the amount of twenty-five percent (25%) of the compensation due plaintiff in Paragraph 1 of this AWARD is hereby approved and shall be paid as follows: twenty-five percent (25%) of the compensation due plaintiff in Paragraph 1 of this AWARD shall be deducted from the sums due plaintiff and shall be paid by defendants directly to plaintiff's counsel.
4. Plaintiff's entitlement to further compensation after he reaches maximum medical improvement is reserved for subsequent determination.
5. Defendants shall pay the costs due the Industrial Commission.
 S/______________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/______________________ BUCK LATTIMORE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 *Page 1